[Cite as *State v. Lindsay*, 2011-Ohio-1708.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-62 |
| JASON A. LINDSAY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of
                             Common Pleas Case No. 2009-CR-514D


JUDGMENT:                    AFFIRMED IN PART; REVERSED IN
                             PART FOR RESENTENCING


DATE OF JUDGMENT ENTRY:      April 1, 2011


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JAMES J. MAYER                             PATRICIA O'DONNELL KITZLER
Richland County Prosecuting Attorney       0040115
38 South Park Street                       3 North Main Street, Ste. 703
Mansfield, Ohio 44902                      Mansfield, Ohio 44902

KIRSTIN PSCHOLKA-GARTNER
0077792
Assistant Prosecuting Attorney
(Counsel of Record)

*Delaney, J.*

{¶1}   Defendant-Appellant, Jason Lindsay, appeals from the judgment of the Richland County Court of Common Pleas, finding him guilty of one count of gross sexual imposition, one count of attempted rape, and one count of kidnapping.   The State of Ohio is the Plaintiff-Appellee.

{¶2}   On March 29, 2009, A.W., who is a mentally handicapped woman who receives services from the Richland County Board of Developmental Disabilities, was living on Davis Road in Richland County, Ohio. That evening, A.W. decided to take a walk and went into Jimmy's bar to sit down before walking back home.  She ended up staying at the bar and playing pool with another patron until approximately 2:30 a.m.

{¶3}   When A.W. walked outside, she did not want to walk back to her apartment by herself, and she accepted a ride from Appellant.  Appellant told her that his car was parked over at his apartment, which was close by, and that if she would walk with him to his car, he would give her a ride home.

{¶4}   When they arrived at Appellant's apartment, A.W. did not see a car and began to get nervous.  She attempted to back away as Appellant began unlocking his apartment door; however, he grabbed her by the shirt and threw her into the apartment.

{¶5}   He removed her clothes, while she protested and yelled "no" and that she did not want to have sex with him.  He continued to remove her clothes and ripped her underwear off of her.  He stated, "oh, come on [A.W.], have kids with me.

{¶6}   He ignored her protests, dragged her into the bathroom, and removed his own clothes.  A.W. continued resisting, burning her leg on the heater as Appellant climbed on top of her and he attempted to penetrate her with the aid of bath gel or hair

oil.  A.W. managed to get away long enough to run to the kitchen and grab her clothes. Appellant caught her and attempted to penetrate her a second time on the kitchen floor.

{¶7}    During this time, A.W. was able to grab her cell phone and dial 911 and ask for help.  At that time, the attempted rape was over and Appellant shifted his motive to keeping A.W. in his apartment to conceal his crime and delay his apprehension.

{¶8}    A.W. pleaded with Appellant to let her leave to go home and take her medication.  She also told him that the police were on their way.  A.W. stated that Appellant did not believe that she had called the police; however, the threat gave her enough time to be able to put her pants back on and grab her ripped underwear and bra.  She attempted to go out the door, but Appellant grabbed her hand, pulled her back inside the apartment, and slammed her up against the kitchen counter.  He slapped her in the face and stated, "Bitch, you're not getting out."

{¶9}    A.W. testified that she was crying at that point and that she was screaming and scared because she thought Appellant was going to kill her.

{¶10}  A.W. was eventually able to escape when Appellant turned around briefly. At that time, the police pulled up.

{¶11}  DNA testing performed after the fact confirmed that DNA that matched Appellant's DNA was found on A.W.'s breast

{¶12}  Appellant was indicted on one count of rape, a felony of the first degree, with a sexual motivation specification, one count of attempted rape, a felony of the second degree, with a sexual motivation specification, and one count of attempted rape, a felony of the second degree.  Appellant pled not guilty at his July 29, 2009, arraignment and his case was set for trial.  Appellant was convicted of gross sexual

imposition, attempted rape, and kidnapping without a sexual motivation specification. He was acquitted of the rape charge.

{¶13} The trial court sentenced Appellant to an aggregate of 11 years in prison and imposed five years of mandatory postrelease control on Appellant and classified him as a Tier III sex offender.

{¶14} Appellant now appeals and raises two Assignments of Error:

{¶15} "I. APPELLANT'S CONSECUTIVE SENTENCES ARE CONTRARY TO LAW, AS THE OFFENSE OF KIDNAPPING AND ATTEMPTED RAPE ARE ALLIED OFFENSES ACCORDING TO R.C. 2941.25, RESULTING IN DOUBLE JEOPARDY AS PROHIBITED BY THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION AND SECTION 10 ARTICLE I OF THE OHIO CONSTITUTION.

{¶16} "II. THE TRIAL COURT ERRED IN ITS IMPOSITION OF POSTRELEASE CONTROL AT SENTENCING BY FAILING TO NOTIFY APPELLANT OF THE CONSEQUENCES OF VIOLATIONS OF SUPERVISION UPON HIS RELEASE FROM PRISON AS REQUIRED BY O.R.C. 2929.14.

I.

{¶17} In Appellant's first assignment of error, he argues that his sentences are contrary to law as the crimes of kidnapping and attempted rape are allied offenses of similar import, pursuant to R.C. 2941.25. We disagree.

{¶18} The General Assembly has expressed its intent to permit multiple punishments for the same conduct under certain circumstances. Under R.C. 2941.25:

{¶19} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶20} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶21} Recently, in *State v. Johnson*, --- Ohio St.3d ----, 2010-Ohio-6314, --- N.E.2d ----, the Ohio Supreme Court overruled *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, which required a comparison of statutory elements solely in the abstract under R.C. 2941.25, and held that the court must consider the defendant's conduct when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25. Johnson, ¶ 44.

{¶22} Thus, "a defendant can be convicted and sentenced on more than one offense if the evidence shows that the defendant's conduct satisfies the elements of two or more disparate offenses. But if the conduct satisfies elements of offenses of similar import, then a defendant can be convicted and sentenced on only one, unless they were committed with separate intent." *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 36 (Lanzinger, J., concurring in part and dissenting in part).

{¶23} The Supreme Court of Ohio has previously held that rape and kidnapping can be allied offenses of similar import. *State v. Donald* (1979), 57 Ohio St.2d 73, 386 N.E.2d 1341, syllabus. However, the court acknowledged that even though the

offenses are of similar import, a person can be convicted of both if the offenses were either (1) committed with a separate animus; or (2) committed separately.

{¶24} In *State v. Logan*, the court laid out the requirements in order to determine what constitutes a separate animus for kidnapping and a related offense. *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345. Specifically, the court stated:

{¶25} "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

{¶26} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

{¶27} " (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at syllabus.

{¶28} Moreover, the court held that "secret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of the underlying offense." Id. at 135.

{¶29}  In the case at bar, Appellant removed the victim from the bar and took her to his apartment, where he then attempted to rape her.  The restraint of the victim after the attempted rape was prolonged.  Her confinement in Appellant's apartment was secretive; when she tried to leave, he grabbed her and dragged her back in.  As the State argues, there was a "significance independent of the restraint associated with the attempted rape."  A.W. testified that she accompanied Appellant from Uncle Johns' bar to his apartment on West Second Street because he told her that his car was parked there and he would give her a ride home.  However, when they arrived, Appellant began unlocking his apartment door and A.W. did not see any cars parked outside.  At that time, she became uncomfortable and tried to get away from Appellant, but he grabbed her by the shirt and threw her inside his apartment.

{¶30}  Once he had her inside, he began removing her clothes.  The whole time, A.W. was yelling "no" and telling him that she did not want to have sex with him.  He ignored her protests, dragged her from the entrance into the bathroom, and removed his own clothes.  A.W. continued resisting, burning her leg on the heater in the bathroom as Appellant attempted to penetrate her.  A.W. managed to get away long enough to run to the kitchen and grab her clothes.  Appellant caught her and attempted to penetrate her a second time on the kitchen floor.

{¶31}  During this time, A.W. was able to grab her cell phone and dial 911 and ask for help.  At that time, the attempted rape was over and Appellant shifted his motive to keeping A.W. in his apartment to conceal his crime and delay his apprehension.

{¶32}  A.W. pleaded with Appellant to let her leave to go home and take her medication.  She also told him that the police were on their way.  A.W. stated that

Appellant did not believe that she had called the police; however, she the threat gave her enough time to be able to put her pants back on and grab her ripped underwear and bra. She attempted to go out the door, but Appellant grabbed her hand, pulled her back inside the apartment, and slammed her up against the kitchen counter. He slapped her in the face and stated, "Bitch, you're not getting out."

{¶33} A.W. testified that she was crying at that point and that she was screaming and scared because she thought Appellant was going to kill her. A.W. was eventually able to escape when Appellant turned around briefly. At that time, the police pulled up and arrested Appellant.

{¶34} Appellant's actions of repeatedly terrorizing A.W., prohibiting her from leaving after he had attempted to rape her, as well as luring her to his apartment before he tried to rape her under false pretenses, constitute kidnapping separate and distinct from the attempted rape.

{¶35} Accordingly, we do not find Appellant's first assignment of error to have merit.

{¶36} Appellant's first assignment of error is overruled.

II.

{¶37} In Appellant's second assignment of error, he argues that the trial court erred in improperly informing him regarding the imposition of postrelease control. The State concedes that the trial court did not properly notify Appellant of post-release control and requests that the case be remanded for resentencing with respect to postrelease control. We reverse and remand for the limited purpose of resentencing Appellant with respect to the imposition of postrelease control.

{¶38}　Appellant's second assignment of error is sustained.

{¶39}　For the reasons set forth above, the judgment of the Richland County Court of Common Pleas is affirmed in part and reversed and remanded in part for a limited resentencing with respect to postrelease control.

By: Delaney, J.

Gwin, P.J. and

Farmer, J. concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER

[Cite as *State v. Lindsay*, 2011-Ohio-1708.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| Jason A. Lindsay | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-62 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed in part and reversed in part. Costs assessed equally to Appellee and Appellant

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER